## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| MEGHAN CASEY, DAVID RAY, ELIZABETH REINSBOROUGH, MARK REINSBOROUGH, THOMAS REINSBOROUGH, AND KATHRYN SHARPLESS, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: 2:19-cv-00392-GZS |
| v. | ) ) | |
| TOWN OF YARMOUTH, | ) ) | |
| Defendant. | ) | |

### TOWN OF YARMOUTH'S MOTION FOR JUDGMENT ON A STIPULATED RECORD

The Town of Yarmouth ("Defendant" or the "Town"), by and through its counsel, hereby submits its Motion for Judgment On A Stipulated Record in the above-captioned action commenced by Plaintiffs Meghan Casey, Elizabeth Reinsborough, Mark Reinsborough, Thomas Reinsborough, David Ray, and Kathryn Sharpless (collectively, "Plaintiffs"). In support hereof, the Town relies upon its Statement of Facts, the Declaration of Nathaniel Tupper, and other supporting materials contained in the Stipulated Record jointly submitted by the Parties.[1] The Town further states as follows:

---

[1] The Parties have jointly submitted a Stipulated Record (including discovery responses and selected documents) and also have separately submitted their own Declarations in support of their respective Statement of Facts. The Declarations submitted by the Parties are also part of the Stipulated Record. The Parties waive objections to foundation, authenticity, and admissibility with respect to the Stipulated Record and note their shared desire for the Court to provide a legal determination as to whether the Charter Amendment that is the subject of this action infringes or does not infringe Plaintiffs' asserted rights under the First Amendment of the U.S. Constitution.

## I.     PRELIMINARY STATEMENT

On November 8, 2018, the voters of the Town of Yarmouth enacted a charter amendment to the Town's Charter that provides that individuals who are elected to the Town Council may not concurrently remain employed by the Town during their term on the Town Council and instead must choose one of the two roles.  *See* DSF ¶12, **Exhibit 2-A,** Charter, Art. II, § 2 (the "Charter Amendment").  The question presented in this action is whether the Town's Charter Amendment of November 8, 2018 unconstitutionally infringes upon Plaintiffs' rights under the First Amendment.[2]

Meghan Casey presently is serving the remainder of her current term as a Town Councilor while remaining employed by the Town's School Department.  She wishes to seek reelection and be seated on the Town Council while remaining employed by the Town.  Mark Reinsborough is a volunteer firefighter employed by the Town who may, in the future, be interested in running for the Town Council.  If he should run for office and be elected, he would wish to be seated as a Town Councilor while also remaining employed by the Town.

Until her retirement on September 4, 2020, Elizabeth Reinsborough was employed by the Town's School Department.  Like Mark Reinsborough, she may be interested running for a seat on the Town Council in the future.  Although she is no longer employed by the Town, if she were to run and be elected, she previously stated that she would wish to be seated as a Town Councilor while remaining employed by the Town.  Like the other Plaintiffs in this action, Thomas

---

[2] Drawing on their Complaint and based on their sworn Discovery Responses, Plaintiffs have alleged and averred that the following specific First Amendment rights have been unconstitutionally burdened the Charter Amendment: the interest in campaigning and advocating for election or re-election to the Town Council; the interest in serving on the Town Council; and the interest in voting for the most qualified candidate for the Town Council, regardless of whether such candidate is employed by the Town.  DSF ¶¶8-10.

Reinsborough, David Ray, and Kathryn Sharpless are residents of the Town who wish to vote for the most qualified candidate of their choice, regardless of whether that candidate is an employee of the Town.

The main point of disagreement between the Parties is that Plaintiffs have alleged and averred that the Charter Amendment *"prohibits"* or *"prevents"* them from running for election or re-election; *"prohibits"* or *"prevents"* them from serving on the Town Council; *"prohibits"* or *"prevents"* them from communicating with voters and constituents about candidacy and proposals; and *"prohibits"* or *"prevents"* them from voting for a qualified candidate for the Town Council, regardless of whether that candidate is an employee of the Town. *See* Complaint, ¶¶77-78, ¶¶86, 88-89, ¶97, DSF ¶¶8-10.   Although Plaintiffs have broadly alleged that specific constitutional rights have been violated, they have failed to plausibly allege and support their claim with non-conclusory facts that could show that the Charter Amendment, on its face, violates such rights.

As reflected in its own terms, the Charter Amendment is <u>*not*</u> a "resign to run" provision that requires an employee to cease employment to seek a seat on the Town Council.  Although such provisions repeatedly have been held constitutional by the U.S. Supreme Court, the Charter Amendment is even less restrictive.  Rather, an employee of the Town who seeks a seat on the Town Council is free to run and campaign for election, as well as advocate and communicate with voters and constituents regarding his or her candidacy or political matters.  Further, voters and constituents are free to vote for an employee of the Town who is a candidate for the Town Council. A Town employee who is elected to the Town Council is free to serve in that position provided that he or she does not remain employed by the Town at the time of seating.[3]  DSF ¶¶44-45, ¶¶11-12.

---

[3] When pressed in discovery to admit that the Charter Amendment, by its own terms, did not "prevent" or "prohibit" the rights that Plaintiffs allege have been burdened, Plaintiffs averred that "the Charter

The Charter Amendment, which is presumed constitutional unless clearly shown otherwise by Plaintiffs, serves numerous government interests, including, without limitation, avoiding conflicts of interest (or the appearance thereof), avoiding self-dealing/self-interested conduct (or the appearance thereof), avoiding interference with municipal government operations and interference with work relationships, and maintaining public trust in public officials, as well as the efficient operation of government.

Because the Town Council is the author of the Town's proposed annual budget submitted to the voters for approval at the Town Meeting, Town Councilors who are employed by the Town are deeply involved in determining gross budget allocations to competing departments of the Town, including to their own department.  Where, as here, employees of the Town have a stake in the outcome of such determinations, a conflict of interest (or the appearance of a conflict of interest) is present.  Further, allowing employees of the Town to concurrently serve as Town Councilors undermines the efficient operation of municipal operations because Town Councilors feel the pull of serving the interests of their own department at the expense of competing departments.  Or, in a stark but actual example, Town Councilors may also override or defy the will of their own supervisors or department, complicating government operations and work relationships.  By enacting the Charter Amendment, the Town's voters expressed their desire to insulate the business of the Town Council from the complications, conflicts, and inefficiencies that

---

Amendment prohibits individuals employed by the town from concurrently serving on the Yarmouth Town Council, thus preventing *or chilling* a reasonable town or school employee from campaigning for election to the Yarmouth Town Council."  DSF ¶6, n. 2, **Exhibit 3-G** at Response No. 1 (RFA Response No. 1 and Int. Response No. 1) (emphasis added).  Although the Town denies any constitutional infirmity, it notes that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014) quoting *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972) (internal quotations omitted).

have arisen in the past when a Town Councilor concurrently occupies the role of employee of the Town.

The Government Interests served by the Charter Amendment are valid, "significant" and "important" enough to outweigh the minimal burdens placed on Plaintiffs in relation to any present or potential candidacy for a seat on the Town Council. *Magill v. Lynch*, 560 F.2d 22, 27 (1st Cir. 1978). Because the U.S. Supreme Court and other courts have upheld far more restrictive "resign to run" provisions, there can be little doubt that the Charter Amendment complies with the requirements of the First Amendment. *Clements v. Fashing,* 457 U.S. 957, 971, 967 (1982) (holding that the Texas Constitution's "resign to run" requirement did not violate the First Amendment or Fourteenth Amendment of the U.S. Constitution); *In re Dunleavy*, 2003 ME 124, ¶¶21, 30-31, 838 A.2d 338, 348 (holding that a "resign to run" rule applicable to judges did not violate the First Amendment and noting that "the law does not recognize either a constitutional right to run for a particular office or the right to vote for a particular candidate."). After weighing and balancing the respective interests of the parties, this Court should conclude as a matter of law that the Charter Amendment serves legitimate state goals and does not unconstitutionally burden Plaintiffs' First Amendment rights. *See Pickering v. Board of Education*, 391 U.S. 563, 570-573 (1968); *Anderson v. Celebrezze*, 460 U.S. 780, 788 n. 9 (1983).

## II.     FACTUAL BACKGROUND

Because of space constraints, the Town provides a summary of relevant facts, but respectfully directs the Court to its Statement of Facts ("DSF"), which relies upon the Tupper Decl. and Stipulated Record, for a more detailed recitation of the facts.

**Background Regarding Plaintiffs**.  Meghan Casey is an employee of the Town's School Department and also serves on the Town Council and would like to continue to do so in the future.

DSF ¶7. Elizabeth Reinsborough until September 4, 2020 was employed by the Town's School Department.  DSF ¶7.  She does not presently serve on the Town Council but had indicated she may want to do so in the future. DSF ¶7.  Mark Reinsborough is employed by the Town as a volunteer firefighter. DSF ¶7. He presently is not a Town Councilor, but has indicated that he may want to serve on the Town Council in the future.  DSF ¶7.  David Ray, Thomas Reinsborough, and Kathryn Sharpless are residents of Yarmouth who are not employees of the Town who desire to vote for who they view to be the most qualified candidate, regardless of whether or not such candidates are employed by the Town.  DSF ¶7.

   **Plaintiff's Asserted Interests**.  In sworn responses requesting specific identification of every interest that Plaintiffs assert have been negatively affected by the Charter Amendment, Meghan Casey identified the following specific interests:

> "a.  Interest in campaigning for reelection to the Yarmouth Town Council.
> b.  Interest in serving an additional term on the Yarmouth Town Council.
> c.  Interest in voting for a qualified candidate for the Yarmouth Town Council, whether or not that candidate is an employee of the town or school department."

DSF ¶8, **Exhibit 3-A** (M. Casey) at Resp. No. 8.

Elizabeth Reinsborough and Mark Reinsborough each identified the following specific interests that Plaintiffs assert have been negatively affected by the Charter Amendment:

> "a. Interest in campaigning for or serving on the Yarmouth Town Council.
> b. Interest in advocating and voting for a qualified candidate for the Yarmouth Town Council, whether or not that candidate is an employee of the town or school department."

DSF ¶9, **Exhibit 3-B** (E. Reinsborough) at Resp. No. 7; **Exhibit 3-C** (M. Reinsborough); at Resp. No. 8.

Thomas Reinsborough, David Ray, and Kathryn Sharpless identified the following specific interests that Plaintiffs assert have been negatively affected by the Charter Amendment:

> "a. Interest in advocating and voting for a qualified candidate for the Yarmouth Town

Council, whether or not that candidate is an employee of the town or school department."
DSF ¶10, **Exhibit 3-D** (T. Reinsborough) at Resp. No. 8; **Exhibit 3-E** (D. Ray) at Resp. No. 8;
**Exhibit 3-F** (K. Sharpless) at Resp. No. 8.

**The Charter Amendment (November 6, 2018).**  Article II, Section 2 of the Charter was
amended on November 6, 2018 by the Town's voters to create additional conditions for Town
Councilors.  A true and correct copy of the Town's Charter, including amendments to Article II,
Section 2, is included in the Stipulated Record as **Exhibit 2-A**.   DSF ¶11.  The Charter
Amendment provides as follows:  "No Councilor shall hold any other paid office or position of
employment with the Town or Department of Education during the term for which the Councilor
was elected to the Council."  DSF ¶12, **Exhibit 2-A,** Charter, Art. II, § 2.[4]

**Scope of Charter Amendment**.  As reflected in its own clear terms, the Charter
Amendment does not prohibit or prevent any individual, including Town employees, from running
or campaigning for a seat on the Town Council; from advocating or expressing political ideas,
from serving on the Town Council; or from voting for a qualified candidate of one's choice.  DSF
¶¶43-46. The Charter Amendment simply provides that an employee of the Town who wins an
election and desires to be seated on the Town Council must choose between his or her employment
and the role of Town Councilor and may not concurrently occupy both positions. DSF ¶¶43-46.
Stated another way, the Charter Amendment is not a "resign to run" provision and Plaintiffs
(including any Town employees) are free to run, campaign, advocate, vote and serve on the Town

---

[4] This section of the Charter also provides that "Town Employees and School Department employees serving on the Yarmouth Town Council on the date of passage of this amendment [November 6, 2018] are exempt from the provisions of this Charter provision for the remainder of their term.  DSF ¶13, **Exhibit 2-A,** Charter, Art. II, §2.  Plaintiff Meghan Casey, an employee of the Town's School Department, is currently serving as a Town Councilor for the remainder of her term under this provision.  DSF ¶13.

Council so long as they do not concurrently occupy both the position of employee and Town Councilor.  DSF ¶¶44-46.

**Genesis of Charter Amendment - Citizens Initiative.**   The Charter Amendment was adopted by voters in November, 2018 based on concerns regarding Town employees concurrently serving as Town Councilors where there may exist conflicts of interest or where employees may be influenced by or exert influence over their employer. DSF ¶¶21, 29, 34.  On September 17, 2018, the proposal for the citizens' initiative for the Charter Amendment was discussed at a Special Meeting and Public Hearing of the Town Council where public comment was received by the Town Council.  DSF ¶21 and **Exhibit 2-B** (transcript of 09/17/18 Special Meeting and Public Hearing); *see also* official public record video of same at Town's video portal here: https://ymtv3.viebit.com/player.php?hash=80OhMHMml1n5.   DSF   ¶21.[5]   The   Charter Amendment was enacted by the Town's voters on November 6, 2018 in view of the concerns expressed at the September 17, 2018 Special Meeting, including the inherent conflict and complications that arise when an employee who sits on the Town Council has an interest in the outcome of budget, debt, and supplemental appropriation determinations. DSF ¶23.

---

[5] At the Special Meeting addressed to the Charter Amendment prior to enactment by voters, members of the public expressed concern about:  1) the potential for a lack of partiality where an employee serving on the Town Council has a stake in the outcome; 2) the need to separate employer/employee roles; 3) interference with work relationships caused by employee loyalties owed to superiors; 4) interference or bias, or the appearance of such, in parent-teacher/coach relationships by which a parent refrains from speaking before the Town Council on matters of public concern because of concern about the negative impact on the parent-teacher/coach relationship where individuals are teachers or coaches who sit on the Town Council;  5) concern over a majority block of Town Councilors employed by a single department having undue influence in relation to proposed budgets and allocation of municipal resources; 6) concern over loyalties to co-workers in a situation where municipal budgets decrease and certain programs must be eliminated; 7) the need to protect Town Councilors from internal and external pressures caused by conflicts of interest; and 8) a chilling effect on speech before the Town Council or actions related thereto based on fear of retaliation against their children where employees of the Town Council are employed by the School Department.  DSF ¶22 and **Exhibit 2-B**.

**Government Interests Served By The Charter Amendment**.   The governmental interests served by the Charter Amendment include the following: 1) avoiding conflicts of interest and the appearance thereof; 2) maintaining public trust in public officials and the efficient operation of government; 3) avoiding self-dealing/self-interested behavior and the appearance thereof; 4) avoiding interference with municipal government operations and work relationships, including deference or loyalty to a supervisor/employer, or conversely, undermining requests or determinations of a supervisor/employer; 5) avoiding granting to Town employees the authority as members of the Town Council to withhold approval to send the annual budget or related items to voters until the Town Council is satisfied with the proposed gross allocation and appropriation of revenues, which include allocations and appropriation for salaries of Town employees; 6) avoiding a situation where a member of the Town Council may exercise authority in that role so as to influence his or her own compensation, benefits, and status as an employee of the Town. DSF ¶23.  Each of the interests set forth above at Items 1-6 are the government interests to be served through enactment of the Charter Amendment ("Government Interests"). DSF ¶23.

**Town's Need To Vindicate The Government Interests.**   The Town's need to vindicate the Government Interests is a function of the unique role of the Town Council in relation to creation of the Town's proposed annual budget, as well as past instances (some of which involving certain Plaintiffs) where there have been real and perceived conflicts of interest (by which an employee has a stake in the outcome of deliberations), interference with government operations and work relationships, and concerns that an employee serving on the Town Council may favor his or her department employer/supervisor, or, conversely, defy his or her superior, upsetting the chain of command.  DSF ¶¶14, 18, 20, 27-29, 32-35.

**Town Council's Role In On Allocation of Resources**.  First, the Town Council is the gatekeeper of the Town's annual budget, creating the proposed annual budget for voters to approve or reject at the annual Town Meeting. DSF ¶¶14-19. Through this process, the Town Council is able to implement its own spending priorities in the proposed annual budget, which cannot be increased by the voters at the Town Meeting.  DSF ¶¶14-19. For instance, allocation for education received more than 67 percent of the recently approved General Fund budget, while other net municipal received just over 23 percent.  DSF ¶19.  Although the Town Council cannot dictate specific line items in the budget for the School Department (that is the responsibility of the School Committee and Superintendent), the Town Council does propose the total gross amount allocated to education under its proposed annual budget. DSF ¶14.  When creating the proposed annual budget to submit to voters, Town Councilors deliberate and vote for allocation of resources that reflect their priorities.  DSF ¶16-18.  The allocations set forth in the proposed annual budget, which may favor one department at the expense of other departments, cannot be increased by voters at the Town Meeting.  DSF ¶¶18-20.  *See* **Exhibit 2-A,** Charter, Art. VII, § 2.  The Town Council also can withhold the proposed annual budget from the voters until it reflects the spending priorities of the Council. DSF ¶14.  In this manner, the Town Council, as creator and gatekeeper of the proposed annual budget, exercises significant influence and control over how the Town's total budget is allocated among competing departments. DSF ¶¶14-19.

**Past Instances Demonstrating The Need To Vindicate the Government Interests Served By The Charter Amendment**.  The Charter Amendment has had an actual impact on municipal operations because it inoculates against past problems that implicated the Government Interests, including avoiding actual or perceived conflicts of interest regarding resource and budget allocation; avoiding interference with municipal government operations and work relationships;

and avoiding a situation where a member of the Town Council exercises authority in that role so as to contravene the will of his or her own supervisor, or alternatively, defer to a supervisor/employer.  DSF ¶26.

      **Plaintiff Thomas Reinsborough**.  For instance, in the past, when Plaintiff Thomas Reinsborough was employed by the Town and served as a Town Councilor, he voted *against* the Fire Chief (his supervisor) to develop specifications and bids for a new fire truck, creating an awkward situation where an employee sought to exercise power over a department head (his supervisor) in relation to operational matters. DSF ¶28, **Exhibit 2-C**.   Separately, Mr. Reinsborough in the same capacities also voted to accept a gift of exercise equipment for the use and benefit of municipal employees (like himself at the time), rather than the public at large.  DSF ¶28.  Further, and again in the same capacities, Mr. Reinsborough voted against moving the budget forward to final vote of approval (the sole negative vote) where the proposed budget included funding for the Fire Department and after he voted to amend the proposed budget in favor of greater funding for road work. DSF ¶29.  Incidents such as these demonstrate the Town's past experience with interference with municipal government operations, work relationships, and chain of command because employees can undermine the direction of their superiors through the authority they exercise as a Town Councilor. DSF ¶29.  The Charter Amendment prevents this from occurring any further.  DSF ¶29.

      **Plaintiff Meghan Casey**.  Plaintiff Meghan Casey has participated in annual meetings and public hearings addressed to the Town Council's deliberation and approval to release the Town's proposed budget to voters for their approval.  DSF ¶¶31-34.  The process for deliberation, debate, internal negotiation, and approval regarding the proposed annual budget to submit to voters is extensive. DSF ¶32-33, **Exhibit 2-D** (meeting minutes reflecting participation of Ms. Casey

regarding proposed annual budget). These meetings included deliberation and advocacy by Town Councilors to refine the proposed budget and to allocate funding to departments competing for resources, including the School Department. DSF ¶34. Ms. Casey participated in such meetings, but did not disclose any conflict of interest or any direct or indirect pecuniary interest in the outcome of budget deliberations that arise out of her status as an employee of the School Department such that she abstained or declined to advocate for funding for the School Department. DSF ¶34.

Ms. Casey has a stake in the outcome of the Town Council's allocation of resources and funding to the School Department, where she is employed. DSF ¶20. In June, 2020, Ms. Casey voted against cuts in the proposed School Department allocation of the budget and she also voted in favor of supplemental funding for the School Department. DSF ¶29. The dual roles of employee and Town Councilor in relation to resource funding implicate at least the appearance of a conflict interest or self-interest. DSF ¶20.

**Existing Rules And Laws Have Been Inadequate To Vindicate The Government Interests**. The Town has its own rules addressed to avoiding conflicts of interests, or the appearance of conflicts of interest, *see* **Exhibit 1-B,** Town Council Rules, at Section 4(F), but these rules are self-monitored, self-enforced, and can be activated by the Town Councilor's subjective view of his or her own potential conflict. DSF ¶¶30, 37-38. Section 4(F) of the Town Council Rules provides that "[a] conflict of interest may arise when specific circumstances exist such that a Town Councilor may reasonably be presumed to be motivated by a personal interest and/or direct financial interest rather than the public interest." DSF ¶37, **Exhibit 1-B**. This provision does not address the manner in which a reasonable presumption of self-interested motivation may arise and by whom. DSF ¶37.

Meanwhile, councilors are required to disclose any potential conflicts of interest, but "[o]nce disclosure is made, the Councilor shall either abstain from the decision-making process (including any discussion, deliberation and/or vote) regarding that agenda item or shall explain why he or she believes his or her abstention is not necessary." DSF ¶38, **Exhibit 1-B**. However, if a Councilor fails to make a disclosure, the process for his or her consideration of abstention is not triggered. DSF ¶38. Further, if a Town Councilor subjectively believes that there is no potential conflict of interest (or appearance of a conflict of interest), the disclosure mechanism and safeguards under Section 4(F) will not be triggered. DSF ¶38.

**State Law -- 30-A M.R.S. § 2605**. State Law also provides that "[e]very municipal and county official shall attempt to avoid the appearance of a conflict of interest by disclosure or abstention." 30-A M.R.S. § 2605(6). DSF ¶39. Indeed, pursuant to 30-A M.R.S. § 2605(1), the "the vote of a body is voidable when any official in an official position votes on any question in which that official has a direct or an indirect pecuniary interest." 30-A M.R.S. § 2605(1), (4). DSF ¶40. Unhelpfully, the term "direct or []indirect pecuniary interest" is not defined in this statute, which also otherwise expressly allows teachers to make or renew employment contracts with municipalities without triggering this statute. 30-A M.R.S. § 2605(4)(A). DSF ¶¶40-41. This statute also provides that municipalities "may adopt an ethics policy governing the conduct of elected and appointed municipal officials." 30-A M.R.S. § 2605(7). DSF ¶39.

The existence of Maine law rendering any Town Council vote "voidable" based on undefined "direct or an indirect pecuniary interest[,]" 30-A M.R.S. § 2605(1), (4), coupled with vague, subjective, and self-enforcing conflict of interest rules under Town Council Rule Section 4(F), make it unsurprising that the Town's voters would exercise their right to adopt an ethics

policy governing the conduct of elected municipal officials, as allowed for under 30-A M.R.S. § 2605(7). DSF ¶47.

**Impact Of Serving The Government Interests**.  Serving and vindicating the Government Interests has a significant impact on municipal operations because it allows the Town to maintain efficient and effective governance while avoiding actual and potential conflicts of interest. DSF ¶25.  The Charter Amendment seeks to serve the Government Interests described above and represents a legislative enactment by the voters of the Town that they wish to avoid both real and perceived conflicts of interests (including where an employee has a "direct or indirect" pecuniary stake in the outcome of budget deliberations and votes), interference with government operations and work relationships (including situations where an employee may either defer to or subvert the will of a superior or his or her department, or where employees seek to protect their own department/employer at the expense of other departments), and the maintenance of efficient government operations that are not clouded by questions of self-interest, self-dealing or the appearance thereof. DSF ¶47.

Without the Charter Amendment, there exists the potential for conflicts of interest, interference and tension in roles between supervisors and employees who sit on the Town Council (and who may exert  influence over, or conversely express opposition to, proposed budget items, authorizations, or items that are requested by his or her employer and require Town Council approval).  DSF ¶¶25, 14, 18, 20, 27-29, 32-35.

The Government Interests served by the Charter Amendment are valid, important, and compelling, especially in view of the fact that the Town's voters themselves have enacted the Charter Amendment.  DSF ¶48.  The Charter Amendment also is the least restrictive means of vindicating the Government Interest because it preserves the right to run, campaign, advocate,

serve, and vote, and only requires that a Town employee who wins a seat on the Town Council chose between the two municipal roles. DSF ¶44.

### III.     PLAINTIFF'S CLAIMS

Plaintiffs have brought this action against the Town pursuant to 42 U.S.C. § 1983, alleging violation of constitutional rights arising under the First Amendment of the U.S. Constitution. Count I was brought by Plaintiff Meghan Casey, who alleged that the Charter Amendment: 1) prohibits her from campaigning for re-election to the Town Council and 2) prohibits her from serving an additional term on the Town Council.  Complaint, ¶77. She further alleges that the Charter Amendment denies her ability to communicate with voters and constituents about her candidacy, community needs, and her proposals in relation to those needs.  Complaint, ¶78.

Count II was brought by Plaintiffs Elizabeth Reinsborough and Mark Reinsborough, who allege that the Charter Amendment prohibits employees of the Town from campaigning for and serving on the Town Council.  Complaint, ¶¶86, 88-89.  They also allege that that the Charter Amendment denies their ability to communicate with voters and constituents about their candidacy, community needs, and their proposals in relation to those needs if, potentially in the future, they decide to run for a seat on the Town Council.  Complaint, ¶¶88, 89; ¶41 ("if she were to decide to run for the town council..."]; Complaint, ¶49 ("Mark Reinsborough would like to someday serve the town on public boards or the town council.").

Count III was brought by all Plaintiffs, who allege that the Charter Amendment prohibits employees of the Town from campaigning and serving on the Town Council, thereby denying Plaintiffs the right to select the most qualified candidates to serve on the Town Council. Complaint, ¶97.  As to all counts, Plaintiffs request a declaration that the Charter Amendment is

unconstitutional, while also seeking to enjoin the Town from enforcing any prohibition on employees of the Town from serving on the Town Council.

## IV.   PROCEDURAL POSTURE

Consistent with this Court's Procedural Order of July 31, 2020, the parties have asked the Court to decide this matter on their respective motions for judgment on a stipulated record in accordance with *Boston Five Cents Sav. Bank v. Sec'y Dep't of Hous. & Urban Dev*., 768 F.2d 5, 11-12 (1st Cir. 1985) ("to stipulate a record for decision allows a judge to decide any significant issues of material fact that [he or she] discovers[.]").  Plaintiffs and Defendant agree that the Court may determine whether, based on the Stipulated Record, Plaintiffs have met their burden to overcome the Charter Amendment's presumption of constitutionality.  *MSAD 6 Bd. of Directors v. Town of Frye Island*, 2020 ME 45, ¶32, 229 A.3d 514, 523 ("Legislative acts are presumed constitutional.").

This approach is particularly apt where, as here, the issue of whether the Town's interests are important enough to outweigh asserted First Amendment rights is a question of law. *Magill,* 560 F.2d at 27; *Simmons v. Rotenberg*, 1990 WL 103715, at *3 (D. Mass. July 16, 1990).  Thus, although the Court will be called upon to balance and weigh contested inferences from facts,[6] the Parties believe that their respective submissions will permit the Court to conclude, as a matter of

---

[6]For instance, Plaintiffs have argued that the Charter Amendment "prohibit[s]" employees of the Town from running or campaigning for office, "prohibit[s]" communicating with voters and constituents, and "prohibit[s]" Town employees from serving on the Town Council.  *See* Complaint, ¶¶2, 77-78, 86-88, 96.  The Town has proffered evidence that shows that the Charter Amendment does not prohibit or prevent any Plaintiff or Town employee from running or campaigning for office, communicating with voters, and winning a seat on the Town Council.  *See* DSF ¶¶12, 44.  Importantly, however, the Town believes that this conclusion may be drawn directly from the content of the Charter Amendment itself, allowing the Court to determine as a matter of law what the Charter Amendment prohibits and does not prohibit. *See* DSF ¶11, **Exhibit 2-A** (Charter Amendment, Art. II, § 2).  In this manner, the Court may balance competing factors to determine as a matter of law whether any limitations on campaigning imposed by the Charter Amendment "substantially serve government interests that are 'important' enough to outweigh the employees' First Amendment rights. *Magill*, 560 F.2d at 27 (citing *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 564 (1973)) ("The problem in any case is to arrive at a balance between the interests of the (employee), as a citizen, in commenting upon matters of public concern and the interest of the (government), as an employer, in promoting the efficiency of the public services it performs through its employees.").

law, whether the Charter Amendment unconstitutionally infringes Plaintiffs' rights under the First Amendment. The Parties also acknowledge the Court's right to require the parties to supplement the record should the Court require additional evidence or testimony in relation to its determination.

### IV.   LEGAL ARGUMENT

**A.   The Language Of The Charter Amendment Cannot Be Reasonably Read As "Prohibiting" Town Employees From Running, Campaigning, And Serving As Town Councilors Or "Prohibiting" Voters From Voting For Candidates Of Their Choice.**

Based on established statutory construction principles, a court's interpretation of a municipal charter is a question of law. *McGettigan v. Town of Freeport*, 2012 ME 28, ¶13, 39 A.3d 48, 51; *Kittery Retail Ventures, LLC v. Town of Kittery,* 2004 ME 65, ¶¶10–17, 856 A.2d 1183; *Passamaquoddy Water Dist. v. City of Eastport,* 1998 ME 94, ¶¶5–7, 710 A.2d 897.  A municipal charter's terms are construed "according to their plain and ordinary meaning," and when that meaning is clear, a court may "only look beyond those words if the result is illogical or nonsensical." *Passamaquoddy Water Dist. v. City of Eastport,* 1998 ME 94, ¶5, 710 A.2d 897 (quotations omitted). "[N]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." *Id*.  Consistent with the presumption of constitutionality afforded to legislative enactments, it is Plaintiffs' heavy burden to prove that the Charter Amendment is unconstitutional. *Id.*, ¶10 ("The party asserting a statute's unconstitutionality must demonstrate a constitutional infirmity 'by strong and convincing reasons.'")

 The Charter Amendment provides: "No Councilor shall hold any other paid office or position of employment with the Town or Department of Education during the term for which the Councilor was elected to the Council." *See* **Exhibit 2-A** (Town Charter at Art. II, § 2).  Based on

its clear terms, the Charter Amendment is entirely neutral and limited in scope.  The Charter Amendment does not seek to impose any burdens based on content, such limitations based on specific political views, party affiliation, or the like.  Nor does the Charter Amendment seek to impose burdens based on constitutionally suspect or arbitrary categories, such as race, religion, or gender.  The Charter Amendment simply provides that employees of the Town who wish to be seated and serve as Town Councilors may not concurrently continue their employment with the Town.  DFS ¶¶44-45.  Such individuals only must choose between the two roles, and may choose either role.  DFS ¶¶44-45.

Notwithstanding Plaintiffs' assertions to the contrary, the language of the Charter Amendment cannot be expanded beyond recognition to provide that Town employees are "prohibited" from running for or campaigning for the Town Council.  The Charter Amendment does not prevent individuals from voting for a qualified candidate of his or her choice.  An employee of the Town may freely campaign for a seat on the Town Council and may communicate his or her positions to prospective voters.  However, an employee of the Town who is elected to, and desires to serve on, the Town Council must resign from his or her employment and may not occupy the two positions at the same time.  DFS ¶¶44-45.

Based on the foregoing, Plaintiffs claims fail on the merits right out of the gate because they are founded on the incorrect contention that the Charter Amendment can be read as "prohibiting" Town employees from running, campaigning, communicating, and serving as Town Councilors and "prohibiting" individuals from voting for qualified candidates of their choice.  Because the Charter Amendment cannot be reasonably construed as supporting these meanings that serve as the basis for Plaintiffs' claims, this Court should enter judgment in favor of the Town and against Defendants on all Counts.

**B.      The Charter Amendment Does Not Implicate Or Burden
         "Fundamental Rights," Precluding Strict Scrutiny Review**

In order to analyze Plaintiffs' constitutional claims based on the First Amendment, it is first necessary to determine the level of scrutiny that will be applied by this Court to review the Charter Amendment.  In all counts, Plaintiffs have alleged that the Charter Amendment is not "narrowly tailored" to achieve the Government Interests asserted by the Town in justification of the Charter Amendment. Complaint, ¶¶ 81, 91, 99.  This allegation is an indirect means of arguing that the Charter Amendment should be reviewed under a heightened, strict scrutiny analysis, rather than a more deferential standard of review.  Plaintiffs are wrong because not one of the rights that they assert has been infringed is a "fundamental right" that requires strict scrutiny review.

There is no "fundamental right" to campaign for and serve on the Town Council.  The U.S. Supreme Court has "never recognized a fundamental right to express one's political views through candidacy." *Carver v. Dennis*, 104 F.3d 847, 850–51 (6th Cir. 1997); *Bart v. Telford,* 677 F.2d 622, 624 (7th Cir.1982) ("The First Amendment does not in terms confer a right to run for public office, and this court has held that it does not do so by implication either."); *Bullock v. Carter,* 405 U.S. 134, 143 (1972).[7]  Indeed, in an analogous case, the Seventh Circuit recently confirmed that "the right to assume or hold office once elected is not a fundamental right. It is well established that the right to be a candidate for office is not a fundamental right." *Claussen v. Pence*, 826 F.3d 381, 385 (7th Cir. 2016) (finding no distinction between the right to campaign for office and the right to serve in office).

---

[7] Plaintiffs have implausibly alleged that the Charter Amendment "prohibits" Plaintiffs from communicating with voters and constituents regarding their candidacy, proposals, and community needs, but the Charter Amendment does not prohibit speech in any manner.  In any event, Plaintiffs' claim of alleged infringement of speech rights are wholly dependent upon their claims of alleged infringement of their right to campaign and right to vote for a qualified candidate.  Accordingly, strict scrutiny would not apply here.

19

In addition, there is no fundamental right to vote for a candidate of one's choice. "[W]hile there is a right to equal participation in voting, a constitutional right to vote for a particular candidate simply does not exist." *Bates v. Jones*, 131 F.3d 843, 852 (9th Cir. 1997), citing *Clements,* 457 U.S. at 972 (upholding provisions of state constitution which provided for automatic resignation of certain state and local officeholders who became candidates for any other state office and which prevented most government officials from becoming eligible to serve in state legislature before completing current term of office). Indeed, a "voter has no right to vote for a specific candidate or even a particular class of candidates." *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998); *Chimento v. Stark,* 414 U.S. 802 (1973) (upholding residency requirements).

Because the rights that Plaintiffs assert have been infringed by the Charter Amendment are not "fundamental rights," this Court should reject Plaintiffs' suggestion that the Charter Amendment should be subject to strict scrutiny review. *Clements,* 457 U.S. at 963 (plurality opinion) (stating that, "[f]ar from recognizing candidacy as a 'fundamental right,'" the Court has held that the 'existence of barriers to candidates' access to a state primary ballot does not compel close scrutiny"); *League of Women Voters v. Diamond*, 965 F. Supp. 96, 99, 103 n.5 (D. Me. 1997) (holding that the right to run for office is not a fundamental right and stating that "[n]either the right to run for elective office nor the right to vote for a particular candidate exists under law.") (citing *Bullock v. Carter,* 405 U.S. 134, 142–143 (1972); *Burdick v. Takushi,* 937 F.2d 415, 419 (9th Cir.1991), *Stiles v. Blunt,* 912 F.2d 260, 266 (8th Cir.1990); *Zielasko v. Ohio,* 873 F.2d 957, 961 (6th Cir.1989)).

C.       **Plaintiff's Reliance On *Callaghan v. City Of South Portland* Is Misplaced.**

Attempting to shoehorn this case into the fact pattern of *Callaghan v. City of South Portland*, 2013 ME 78, 76 A.3d 348, Plaintiffs implausibly allege that the Charter Amendment "prohibits" them from communicating with voters and constituents regarding their candidacy, proposals, and community needs.  However, the Charter Amendment does not limit freedom of expression in any manner. DFS ¶44-45.  Individuals who are Town employees (including Plaintiffs) may freely campaign, communicate, vote for a qualified candidate (including an employee of the Town), and be seated as a Town Councilor so long as they do not concurrently remain employed by the Town.  DFS ¶44-46.

*Callaghan* is entirely distinguishable from the facts of this case because the City of South Portland's personnel policy in that case provided that its employees could not, among other things, "seek or accept nomination or election to any South Portland elective office[;]" could not "circulate petitions or campaign literature for any City elective office[;]" and could not "solicit or receive …contributions … from any person for or against any candidate[.]"  *Callaghan*, 2013 ME 78, ¶4, 76 A.3d 348.  The South Portland personnel policy thus not only required employees to first resign to run for office, but also sought to implement a prior restraint on speech, predictably resulting in the Law Court striking down this provision as violative of the First Amendment. *Id.*, ¶34.  In stark contrast, the Charter Amendment is not a "resign to run" provision and it does not seek to implement any restraint on speech.  DSF ¶44.  For this reason, *Callaghan* is inapposite.

D.       **This Court Should Apply Applicable Balancing Tests To Determine Whether The Government Interests Served By The Charter Amendment Outweigh Plaintiffs' First Amendment Rights.**

When analyzing claims that a policy or statute violates the First Amendment, courts typically have employed a "balancing test between the individual's First Amendment rights and

the interests of the public body." *Claussen*, 826 F.3d at 386 (quoting *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 792 (7th Cir. 1995) (internal quotations omitted).  In *Claussen*, the Seventh Circuit describes this inquiry as considering whether the challenged "restrictions 'serve legitimate state goals,'" and whether the state's interest outweighs the burden on plaintiffs' First Amendment rights.  *Id*., citing  *Anderson*, 460 U.S. at 788 n. 9.  In the First Circuit, this balancing test has been described as whether the challenged restrictions "substantially serve government interests that are 'important' enough to outweigh" the employees' First Amendment rights. *Magill*, 560 F.2d at 27.

Although courts have consistently acknowledged that there remains some uncertainty concerning the analytical framework for consideration of First Amendment claims asserted against the government as an employer, they generally have applied the *Pickering* Test to analyze public employees' First Amendment claims, and the *Anderson* Test to analyze claims of concerning the right to vote.  *See Pickering v. Board of Education*, 391 U.S. 563 (1968); *Anderson*, 460 U.S. 780 (1983).

***Pickering* Test**.  Under the *Pickering* test addressed to First Amendment claims of public employees, courts must "balance the value of an employee's speech - both the employee's own interests and the public's interest in the information the employee seeks to impart - against the employer's legitimate government interest in 'preventing unnecessary disruptions and inefficiencies in carrying out its public service mission.'" *Guilloty Perez v. Pierluisi,* 339 F.3d 43, 52 (1st Cir. 2003) (quoting *O'Connor v. Steeves,* 994 F.2d 905, 915 (1st Cir. 1993)); *see also Pickering,* 391 U.S. at 568 ("The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").  In assessing the government's interest in allaying disruption and inefficiencies

in the workplace, a court should include in its considerations (1) "the time, place, and manner of the employee's speech," and (2) "the employer's motivation in making the adverse employment decision." *Davignon v. Hodgson,* 524 F.3d 91, 104 (1st Cir. 2008); *Decotiis v. Whittemore*, 635 F.3d 22, 35 (1st Cir. 2011).

   ***Anderson* Test**.   Under the *Anderson* test addressed to the right to vote, a court:

> must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all of these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789.  In *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), the Supreme Court further refined the *Anderson* test to hold that when laws impose "severe restrictions" on the right to vote, the regulation must be "narrowly drawn to advance a state interest of compelling importance," but also held that where a law "imposes only 'reasonable, nondiscriminatory restrictions'" upon a plaintiffs First and Fourteenth Amendment rights, the state's "'important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson,* 460 U.S. at 788) (internal quotations omitted).

   Notably, both the *Pickering* and *Anderson* tests have similar requirements for the balancing analysis that must be performed by the Court.  Both tests require: 1) identification of the First Amendment interest asserted by Plaintiff and assessment of the magnitude of such interest; 2) identification of the government interests justifying the First Amendment interests at issue and assessment of the extent to which such restriction vindicates such government interests; 3) and balancing of these factors to determine, as a matter of law, whether the challenged restrictions

"substantially serve government interests that are 'important' enough" to outweigh the employees' First Amendment rights. *Magill*, 560 F.2d at 27.

### E.    The Charter Amendment Vindicates Substantial, Important, and Legitimate Government Interests.

On September 27, 2018, a Special Meeting and Public Hearing before the Town Council was conducted to deliberate and receive public comment concerning the proposed Charter Amendment, which was enacted by the Town's voters through a citizen's initiative on November 6, 2018.  DSF ¶¶21, 22; *see* **Exhibit 2-B** (transcript of Special Meeting and Public Hearing); *see supra* n. 5 hereto (discussing public concerns and interests).  Following the Special Meeting and Public Hearing, the Charter Amendment was enacted by the Town's voters on November 6, 2018. DSF ¶¶23, 11.

The Town identified the following Governmental Interests served by the Charter Amendment: 1) avoiding conflicts of interest and the appearance thereof; 2) maintaining public trust in public officials and the efficient operation of government; 3) avoiding self-dealing/self-interested behavior and the appearance thereof; 4) avoiding interference with municipal government operations and work relationships, including deference or loyalty to a supervisor/employer, or conversely, undermining requests or determinations of a supervisor/employer; 5) avoiding granting to Town employees the authority as members of the Town Council to withhold approval to send the annual budget or related items to voters until the Town Council is satisfied with the proposed gross allocation and appropriation of revenues, which include allocations and appropriation for salaries of Town employees; 6) avoiding a situation where a member of the Town Council may exercise authority in that role so as to influence his or her own compensation, benefits, and status as an employee of the Town. DSF ¶23.

### F.   The Town Has Demonstrated A Need To Vindicate
####   The Government Interests Based On Past Experiences
####   Involving Employees Serving On The Town Council.

The Town's need to vindicate Government Interests is not hypothetical in nature or based on conjecture.  Rather, this need is based on past experiences, conflicts, and tensions arising out of employees of the Town serving as Town Councilors.  DSF ¶26.  For instance, Plaintiff Tom Reinsborough in the past concurrently was employed by the Town's fire department and served as a Town Councilor.  In one instance, Mr. Reinsborough voted against the request of the Town's Fire Chief (his supervisor) to develop specifications and bids for a new fire truck, thereby using his position as Town Councilor to exercise authority over his superior.  DSF ¶28.  In another instance, Mr. Reinsborough voted to accept a gift of exercise equipment for the use and benefit of municipal employees only (like himself) to the exclusion of the public at large. DSF ¶27.  Finally, Mr. Reinsborough, as Town Councilor, once voted to withhold moving budget deliberations forward where the budget included funding for the Fire Department, his employer.  DSF ¶29. Incidents such as these implicate each of the six Government Interests, including avoiding conflicts of interest and avoiding interference with municipal government operations and municipal government work relationships.  DSF ¶¶29, 23, 47-48.

Separately, Plaintiff Meghan Casey, who is employed by the School Department, and serves as a Town Councilor, has participated in Town Council deliberations and votes addressed in part to allocation of resources to her employer, the School Department, but without disclosing any conflict of interest or recusing herself from such votes.  DSF ¶¶20, 30-35.  Although Ms. Casey abstained from deliberations related to Charter Amendment, she has not done so for deliberations involving allocation of resources to the School Department, which typically receives more than 65 percent of municipal budget resources. DSF ¶¶20, 30-35, 19. Ms. Casey has opposed cuts to the

School Department and voted for supplemental appropriations for the School Department, which come at the expense of other departments.  DSF ¶¶20, 30-35.  Although Ms. Casey asserts that she does not directly set her own salary, she does have a stake in the outcome where resources are allocated to her employer. DSF ¶¶20, 14-19.  Ms. Casey's overlapping roles implicate all of the Government Interests, including avoiding conflicts of interest, self-interest and influence over resources allocated to the Town Counselors' employer, as well as the appearance thereof. DSF ¶23, 30, 34.

### G.  Pre-Existing Council Rules And State Law Have Been Ineffective To Vindicate the Government Interests Served By The Charter Amendment.

The Town's existing rules and state law have been inadequate to vindicate the Government Interests served by the Charter Amendment.  Prior to the enactment of the Charter Amendment, the Town enacted Town Council Rule § 4(F), which provides that "Town Councilors should avoid the appearance of a conflict of interest, bias or improper influence by disclosure and/or abstention." Town Council Rules, § 4(F) ("Section 4(F)").  *See* DSF ¶¶30, 36, **Exhibit 1-B**.  Section 4(F) provides that "[a] conflict of interest may arise when specific circumstances exist such that a Town Councilor may reasonably be presumed to be motivated by a personal interest and/or direct financial interest rather than the public interest." *See* **Exhibit 1-B** at §4(F).  This provision also provides that "[c]ouncilors are required under this Policy to disclose any potential conflict of interest they may have in any agenda item before the Council.  Once a disclosure is made, the Councilor shall either abstain from the decision-making process (including any discussion, deliberation and/or vote) regarding that agenda item or shall explain why he or she believes his or her abstention is not necessary." *Id*.

Section 4(F) has been ineffective to vindicate the Government concerns because it is self-monitored and self-enforcing by each Town Councilor insomuch as it relies upon the subjective

determination of a Town Councilor concerning his or her motivation, as well as his or her own view of whether a potential conflict of interest (or appearance of conflict of interest) may exist. DSF ¶37-38.  If a Councilor fails to make a disclosure, the process for his or her consideration of abstention is not triggered.  Further, if a Town Councilor subjectively believes that there is no potential conflict of interest (or appearance of conflict interest), the disclosure mechanism and safeguards under Section 4(F) will not be triggered.  DSF ¶37-38.

Separately, state law has provisions that address conflicts of interests, but they also have exceptions and carve-outs that leave room for subject determinations.  *See* 30-A M.R.S. § 2605. Maine law provides that "[e]very municipal and county official shall attempt to avoid the appearance of a conflict of interest by disclosure or abstention."  30-A M.R.S. § 2605(6).  Section 2605 creates stark consequences for legislative enactments where an official votes on a question where he or she "has a direct or an indirect pecuniary interest[;] such vote of the governing body is "voidable." 30-A M.R.S. § 2605(1), (4).  However, this provision unhelpfully does not define the term "direct or indirect pecuniary interest," while only providing an illustrative example (such as a contract award where the official directly or indirectly owns a 10 percent interest in the entity). Section 2604, however, does not prohibit a member of a town council who is also a teacher from contracting with the municipality to enter into teacher employment contracts.  30-A M.R.S. § 2605(4)(A).  Although state law appears to exempt personal teacher employment contracts from state conflict of interest laws, the same is not true for all other aspects related to all other matters, including other matters relating to the School Department.  Under Maine law, the Town was within its rights to implement the Charter Amendment to vindicate the Government Interests. 30-A M.R.S. § 2605(7) ("municipal officers may adopt an ethics policy governing the conduct of elected and appointed municipal officials."), DSF ¶48.

### H.  Under Both The *Pickering* Test and the *Anderson* Test, The Town's Government Interests Served By The Charter Amendment Strongly Outweigh The Minimal Burden On Plaintiffs' First Amendment Rights.

**Plaintiffs' Asserted Interests**.  Plaintiffs have alleged that the Charter Amendment "prohibits" them from: running and campaigning for, and serving on the Town Council; communicating with voters regarding policy initiatives; and "denying" Plaintiffs the ability to select a candidate that is the most qualified, in their opinion, to serve as a Town Councilor. Complaint, ¶¶77-79, ¶¶86-89, ¶¶96-97.  Plaintiffs have specifically identified the right to run and campaign for the Town Council, advocate to voters, serve on the Town Council, and vote for the most qualified candidate of their choice.[8]  *See also* __Exhibit 3-G__, Responses to RFAs and Second Interrogatory Response at No. 1 (stating the Charter Amendment "prevents or chills" reasonable employees of the Town from campaigning for election because they cannot concurrently serve as a Town Councilor and employee).

Plaintiffs' asserted interests have not been significantly burdened by the Charter Amendment because the Charter Amendment does not prevent any employee of the Town from running and campaigning for office or from expressing political views in any manner. DSF ¶¶44-45.  Meghan Casey, Elizabeth Reinsborough, and Mark Reinsborough (and any other Plaintiffs) are free to run for a seat on the Town Council and serve in that capacity so long as they resign from their employment position with the Town. DSF ¶¶44-45.  Plaintiffs may vote for a qualified candidate of their choice, including a candidate who is an employee of the Town. DSF ¶¶44-45. The only burden imposed by the Charter Amendment is that an employee of the Town who is

---

[8] *See* DSF ¶¶8-10, citing to __Exhibits 3-A__ through __Exhibit 3-F__ in cited Interrogatory Responses (identifying the sworn specific interest in campaigning, serving on the Town Council, and voting for a qualified candidate as the specific interests Plaintiffs assert have been negatively affected by the Charter Amendment).

elected to the Town Council must choose whether to continue in his or her employment or be seated as a Town Councilor. DSF ¶¶44-45.

Addressing analogous, but more restrictive "resign to run" statutes and ordinances, courts have not hesitated to characterize the burden on the right to run as "insignificant," "de minimis," and "minimal." *Clements*, 457 U.S. at 971, 967 (concluding that the resign-to-run provision's "burden on [plaintiffs'] First Amendment interests in candidacy [was] insignificant"); *Claussen* , 826 F.3d at 387 (upholding Indiana's "resign-to-run" law, similar to that at issue in *Clements*); *Brazil–Breashears v. Bilandic*, 53 F.3d 789, 791–92 (7th Cir. 1995) (upholding an Illinois Supreme Court policy that prohibited all judicial employees from "becom[ing] a candidate for nomination, or election to, or accept[ing] appointment to any public office"); *Fletcher v. Marino*, 882 F.2d 605, 612–13 (2d Cir. 1989) (upholding a New York law prohibiting employees of local school boards from also serving on those school boards); *Wachsman v. City of Dallas*, 704 F.2d 160, 166–68 (5th Cir. 1983) (upholding a provision of the Dallas City Charter prohibiting city employees from participating in non-partisan political activities); *Otten v. Schicker*, 655 F.2d 142, 145 (8th Cir. 1981) (upholding a St. Louis Police Department rule prohibiting officers from becoming candidates for elected office).

Because the foregoing cases uniformly have upheld the constitutionality of more restrictive "resign to run" provisions, there can be little doubt that the Charter Amendment's "resign if you choose to serve" provision is constitutionally permissible. Thus, construing the Charter Amendment according to its clear terms, and not according to Plaintiffs' conclusory assertions of outright "prohibition" on campaigning, advocacy, and service on the Town Council and "denial" of voting rights, the actual burden on Plaintiffs' asserted First Amendment rights caused by the Charter Amendment is minimal. *Clements*, 457 U.S. at 971, 967.  Without conceding that strict

29

scrutiny applies here, it is notable that this burden is also the least restrictive means possible because it does not impede or restrain any First Amendment expression, and only requires a successful candidate to choose between two roles. DSF ¶44.

**The Town's Asserted Interests**.  The Government Interests that the Town seeks to vindicate through the Charter Amendment are "significant" and "important" enough to outweigh Plaintiffs' interests.  *Magill*, 560 F.2d at 27.  Each of the six Government Interests identified by the Town serves the Town's "legitimate government interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission,'" *Guilloty Perez,* 339 F.3d at 52 (citing *Pickering,* 391 U.S. at 568–75)( internal citations and quotations omitted), and "serve legitimate state goals" that outweigh the Plaintiffs' interests.  *Anderson*, 460 U.S. at 788 n.9.

In addition, the U.S. Supreme Court has recognized the government's interest in achieving efficiency and integrity goals as an employer, expressly recognizing the interests of whether employee exercise of First Amendment rights "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Pickering,* 391 U.S., at 570-573.  *See also Rankin v. McPherson*, 483 U.S. 378, 388 (1987) ("These considerations, and indeed the very nature of the balancing test, make apparent that the state interest element of the test focuses on the effective functioning of the public employer's enterprise. Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest.").[9]

---

[9] Although by no means restrictive, the First Circuit has recognized the following significant interests as allowing for regulation or burdening of First Amendment rights of its employees. *Magill*, 560 F.2d at 28 (citing *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers ("Letter Carriers"),* 413 U.S. 548, 564 (1973)). Those interests first may include preventing political intrusion into efficient

The Government Interests that the Charter Amendment seeks to vindicate significantly overlap with the "strong state interests" that have been identified by the U.S. Supreme Court justifying burdening the First Amendment rights of public employees. DSF ¶¶23, 47, 48. Although the Town generally has a strong interest in avoiding conflicts of interest (or the appearance thereof), avoiding interference with municipal government operations and work relationships, it also has pointed to past instances involving Plaintiff Tom Reinsborough where his authority as a Town Councilor resulted in the awkward and untenable situation where he was able to defy the will of his superior. DSF ¶¶27-29. Further, the Town has an undeniable interest in avoiding conflicts of interest (and the appearance thereof) and influence over resource allocation where a Town employee has a direct or indirect stake in outcome. It has been able to identify instances where Plaintiff Meghan Casey participated in Town Council proceedings without disclosure or recusal where the proposed annual budget and supplemental budget appropriations for the School Department were fixed and supplemented. DSF ¶¶20, 32-35.

Because Plaintiff's rights to campaign, serve, advocate, and vote[10] are not substantially or directly burdened by the Charter Amendment, this Court should, after weighing and balancing the Parties' respective interests, conclude as a matter of law the Town's Government Interests are "significant" and "important" enough to outweigh Plaintiffs' interests because they serve

---

administration—"favoritism in minute decisions affecting welfare, tax assessments, municipal contracts and purchasing, firing, zoning, licensing, and inspections." *Id.* Second is the interest in avoiding the danger of creating a powerful political machine within the ranks of government employees or the appearance that government employees are subject to improper political influence. *Id.* Third is the state's interest in ensuring that employees achieve advancement on their merits and in guaranteeing that they are free from coercion and the prospect of favor from political activity. *Id.*

[10] *See* DSF ¶¶8-10, citing to **Exhibits 3-A** through **Exhibit 3-F** in cited Interrogatory Responses (identifying the sworn specific interest in campaigning, serving on the Town Council, and voting for a qualified candidate as the specific interests Plaintiffs assert have been negatively affected by the Charter Amendment); *see also* DSF ¶6, n. 2, **Exhibit 3-G** at Response No. 1 (RFA Response No. 1 and Int. Response No. 1) (averring "prevention" *or* "chilling" of the exercise of First Amendment rights).

legitimate state goals.  *Magill*, 560 F.2d at 27; *Pickering,* 391 U.S., at 570-573;  *Anderson*, 460 U.S. at 788 n. 9; *Clements*, 457 U.S. at 971, 967.

### H.    Plaintiffs Lack Standing To Assert Their Claims.

Although the standard for establishing standing to assert First Amendment claims is lower than for other constitutional claims, *Osediacz v. City of Cranston*, 414 F.3d 136, 140 (1st Cir. 2005), this Court is not empowered to enter advisory opinions.  Federal court may only adjudicate actual "cases" and "controversies" under Article III, § 2 of the U.S. Constitution.

In order to satisfy the requirements of standing, " [t]he party invoking federal jurisdiction" must show through evidence: (a) "an injury in fact" that is "concrete and particularized"[11] and "actual or imminent, not conjectural or hypothetical"; (b) "a causal connection"—what the U.S. Supreme Court has referred to as "traceability"—between the injury and the challenged conduct; and (c) redressability—that the injury will "likely ...be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted).  If a future injury is "'too speculative for Article III purposes' and no prosecution is even close to impending," then there is no standing to sue. *Blum*, 744 F.3d 790, 799 (1st Cir. 2014) (internal quotations omitted).

Plaintiffs assert that the Charter Amendment violates their interest in advocating and voting for a qualified candidate for the Yarmouth Town Council, whether or not that candidate is an employee of the Town or school department.  Meghan Casey, Elizabeth Reinsborough, Mark

---

[11] For injury to be concrete, it must "actually exist"; it cannot be "abstract." *Spokeo, Inc. v. Robins*, ——— U.S. ———, 136 S. Ct. 1540, 1548 (2016).  For injury to be "particularized," it must go beyond a "generalized grievance[ ]," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344, 348 (2006) (citation omitted), to manifestly "affect the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1. Injuries that are too "widely shared" or are "comparable to the common concern for obedience to law" may fall into the category of generalized grievances about the conduct of government. *Becker v. Fed. Election Comm'n,* 230 F.3d 381, 390 (1st Cir. 2000); *see Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Reinsborough also assert an interest in campaigning for, and serving on, the Town Council. Because the Charter Amendment on its face does not limit the ability of Town employees to run for and campaign for a seat on the Town Council, DSF ¶44-45, Plaintiffs assertion that they are prevented or prohibited from exercising the right to campaign, advocate, serve, and vote for a candidate who is an employee of the Town is factually incorrect and unsupported.

Plaintiffs have not demonstrated that they have suffered any concrete, particularized, injury in fact that is not conjectural or generalized, and is otherwise traceable to the Charter Amendment. Plaintiff Meghan Casey is free to advocate, campaign, and be eligible to serve on the Town Council in the next election *if she decides to run for re-election and is reelected*.  The element of causation is implicated because the future harm alleged by Plaintiffs depends on an unknown future condition, namely whether Ms. Casey will run for reelection, prevail, and then be required to choose between her employment or seat on the Town Council.[12]  Because the future harms asserted by Plaintiffs (excluding Ms. Casey) depend upon "the independent action of some third party[,]" *Lujan*, 504 U.S. at 560-61, those asserted injuries are "too speculative for Article III purposes," *Blum*, 744 F.3d at 799, thereby inviting an impermissible advisory opinion.  On the Stipulated Record, Plaintiffs cannot meet their evidentiary burden to satisfy the requisite elements of standing. *Lujan*, 504 U.S. at 561.[13]

---

[12] The same is true for claims asserted by Elizabeth Reinsborough and Mark Reinsborough.  First, Ms. Reinsborough is no longer employed by the Town.  Even if she were still employed by the Town, the assertion by Elizabeth Reinsborough and Mark Reinsborough that they "may" in the future run for a seat on the Town Council, while also averring that the Charter Amendment makes this "less likely," DSF ¶4, **Exhibit 3-B** at Response No. 2, **Exhibit 3-C** at Response No. 2, falls short of articulating an injury in fact that is not speculative and conjectural and is traceable to the Charter Amendment.

[13] For the same reasons, Plaintiffs also cannot satisfy the inter-related requirement of ripeness. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotations and citations omitted).

WHEREFORE, Defendant Town of Yarmouth requests this Court to: i) enter judgment in favor of Defendant and against Plaintiffs on all counts; ii) deny Plaintiffs' their requested relief in all respects; and iii) grant such additional and further relief as may be just and proper.

Dated: September 15, 2020                    Respectfully submitted,


/s/ Daniel J. Murphy
Daniel J. Murphy, Bar No. 9464
BERNSTEIN SHUR
100 Middle Street,  P.O. Box 9729
Portland, ME  04104-5029
Tel: 207-228-7120
dmurphy@bernsteinshur.com

Attorney for Defendant
Town of Yarmouth


## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated above, I served the foregoing document on counsel for Plaintiffs via ECF to:  Zachary L. Heiden, Esq. and Emma Bond, Esq.

/s/ Daniel J. Murphy
Daniel J. Murphy